```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

Mangiardi Brothers
Trucking, Inc.

    v.                                      Civil No. 12-cv-481-JD
                                                   Opinion No. 2013 DNH 069

Dewey Environmental, LLC,
et al.

## O R D E R

Mangiardi Brothers Trucking, Inc. ("Mangiardi") brought suit against Dewey Environmental, LLC ("Dewey"); Francis Harvey and Sons, Inc. ("Francis Harvey"); Babcock and Wilcox Construction Co., Inc. ("Babcock"); and Berlin Station, LLC ("Berlin Station") alleging claims arising out of unpaid invoices for Mangiardi's services in hauling hazardous waste from a construction site. Babcock and Berlin move to dismiss the complaint. Mangiardi objects to the motions.

## Background

In the fall of 2011, Berlin Station hired Babcock as its general contractor for the construction of a "biomass energy plant" (the "Project"). Berlin Station owns the property upon which the Project was being constructed (the "Construction Site").

In November 2011, Babcock entered into an agreement with Francis Harvey, under which Francis Harvey agreed to perform certain site work for the Project.  Francis Harvey subcontracted with Dewey to perform hazardous waste removal on the Project.

Dewey subsequently contacted and subcontracted with Mangiardi to haul the hazardous waste materials from the Construction Site.  Dewey agreed to pay Mangiardi $115 per ton of waste hauled and payment was due within fourteen days after the date of an invoice.  The terms of the agreement were confirmed through an email between Dewey and Mangiardi.  Mangiardi alleges that Dewey discussed the terms of the agreement with Francis Harvey.

Mangiardi began performing the services required under the contract with Dewey on December 1, 2011.  On December 5, 2011, Mangiardi submitted its first invoice to Dewey in the amount of $20,513.75.  Mangiardi received a check from Francis Harvey for the full amount of the invoice on December 12, 2011.

Mangiardi continued to perform the services required under the contract and submitted five more invoices to Dewey, totaling $128,751.70.  When payment for the first of the five invoices was not made within fourteen days, Mangiardi contacted both Dewey and Francis Harvey.  Each promised that a payment would be made shortly.

On January 9, 2012, Dewey wired $50,000 to Mangiardi. Despite contacting Dewey and Francis Harvey on many occasions since then, Mangiardi has not received any further payment from either company.

After being unsuccessful in obtaining payment from Dewey and Francis Harvey, Mangiardi contacted Babcock to request payment of the outstanding invoices. Mangiardi alleges that Babcock stated that it had paid Francis Harvey in full for the portion of work performed by Mangiardi and, therefore, would not pay Mangiardi the money Mangiardi alleged it was owed.

Mangiardi subsequently contacted Cate Street Capital ("Cate Street"), which it believed to be the owner of the Construction Site, to request payment of its invoices. Cate Street said that it was not the owner of the Construction Site and refused to make any payments to Mangiardi.[1]

## Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the facts alleged, when taken as true and in the light most favorable

---

[1] Mangiardi alleges Cate Street formed and owned Berlin Station so that Berlin Station could take title to the Construction Site.

to the plaintiff, state a claim on which relief can be granted. <u>Rederford v. U.S. Airways, Inc.</u>, 589 F.3d 30, 35 (1st Cir. 2009). Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff need provide only a short and plain statement that provides enough facts "'to raise a right to relief above the speculative level . . . .'" <u>Ocasio-Hernandez v. Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). The court takes the well-pled allegations as true, views all of the facts in the light most favorable to the non-moving party, and determines whether the complaint alleges facts to support a claim "that is plausible on its face." <u>Downing v. Glove Direct LLC</u>, 682 F.3d 18, 22 (1st Cir. 2012) (internal citation and quotation marks omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).

## Discussion

Mangiardi brings claims against Dewey and Francis Harvey for breach of contract, breach of the covenant of good faith and fair dealing, and violation of New Hampshire's Consumer Protection Act, RSA 358-A:2. It also brings claims for unjust enrichment, quantum meruit, and restitution against all the defendants.

4

Berlin Station and Babcock move to dismiss the claims against them.  They argue that a third-tier subcontractor such as Mangiardi (an entity who subcontracts with a sub-subcontractor) cannot recover against an owner or a general contractor under a quasi-contract theory.  They also contend that Mangiardi's claims for unjust enrichment, quantum meruit, and restitution, should be considered together as one claim.

"New Hampshire cases do not clearly differentiate between theories of unjust enrichment and quantum meruit."  <u>Eastern Elec. Corp. v. FERD Const. Inc.</u>, 2005 WL 3447957, at *3 n.1 (D.N.H. Dec. 15, 2005)(citing cases).  Certain New Hampshire cases, however, appear to set forth slightly different elements for the claims and address them separately.  <u>See, e.g.</u>, <u>Gen. Insulation Co. v. Eckman Constr.</u>, 159 N.H. 601, 611-12 (2010) (analyzing claims of unjust enrichment and quantum meruit).  Therefore, the court will assume, without deciding, that unjust enrichment and quantum meruit are separate claims under New Hampshire law and addresses them separately.  Restitution, however, is not a separate cause of action under New Hampshire law and is only a remedy for unjust enrichment.  <u>See, e.g.</u>, <u>Ellis v. Candia Trailers and Snow Equip., Inc.</u>, 58 A.3d 1164, 1168 (2012) ("In New Hampshire, a plaintiff is entitled to restitution for unjust

enrichment" if the plaintiff proves his claim.) (internal citation and quotation marks omitted).[2]

The New Hampshire Supreme Court has not specifically addressed claims of unjust enrichment or quantum meruit asserted by a third-tier subcontractor against a general contractor, or addressed certain arguments advanced by Mangiardi in its claims against Berlin Station. "Where no authoritative decision from the state court of last resort resolves an issue of state substantive law, [the court] must predict, as best [it] can, that court's resolution of the issue . . . ." Kunelius v. Town of Stow, 588 F.3d 1, 9 (1st Cir. 2009). "In that endeavor, the federal court may seek guidance from a wide range of sources, including but not limited to 'analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law.'" Rathbun v. Autozone, Inc., 361 F.3d 62, 66

---

[2]Mangiardi contends that the court should deny Berlin Station's and Babcock's motions because they repeat the arguments made in their motions to dismiss the original complaint, which the court denied. The court, however, denied Berlin Station's and Babcock's motions to dismiss the original complaint as moot because Mangiardi filed an amended complaint under Federal Rule of Civil Procedure 15(a). The court did not consider the merits of the arguments in Berlin Station's and Babcock's motions to dismiss the original complaint. The motions which are the subject of this order address the allegations in the amended complaint, which is the operative complaint, and the court considers those arguments below.

(1st Cir. 2004) (quoting Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996)).

A.   Unjust Enrichment

"The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity."  Cohen v. Frank Developers, Inc., 118 N.H. 512, 518 (1978) (internal citation and quotation marks omitted); see also Pella Windows & Doors, Inc. v. Faraci, 133 N.H. 585, 586 (1990).  To be entitled to restitution for unjust enrichment, a plaintiff must show that the defendant received "a benefit which would be unconscionable for him to retain."  Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009) (internal quotation marks omitted); see also R. Zoppo Co., Inc. v. City of Manchester, 122 N.H. 1109, 1113 (1982).  In other words, "[t]he party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain."  Gen. Insulation, 159 N.H. at 611; see also Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 64 (1st Cir. 2001).

7

1. <u>Berlin Station</u>

"The circumstances under which an unjust enrichment claim may be brought by a subcontractor against an owner, absent privity, are limited." <u>Axenics, Inc. v. Turner Const. Co.</u>, --- A.3d ---, 2013 WL 960175, at *9 (N.H. Mar. 13, 2013) (internal citation and quotation marks omitted). "There may be special circumstances that would justify requiring the owner to pay, such as when the owner accepts benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefore by the owner." <u>Id.</u> (internal quotation marks and citations omitted). "However, the general rule in this area is that a subcontractor who furnishes material or labor pursuant to an agreement with, or upon the order and credit of, a general contractor cannot recover against the property owner upon the basis of an implied promise to pay arising from the owner's receipt and acceptance of the benefit of the material and labor finished." <u>Id.</u> (internal citation omitted).

Mangiardi contends that it can maintain an unjust enrichment claim against Berlin Station "because (1) Mangiardi does not have an adequate remedy at law against Dewey and/or Francis Harvey, and (2) Mangiardi has learned that Berlin Station may not have paid Babcock in full for the services Mangiardi provided at the

Construction Site." Mangiardi's contention that it does not have an adequate remedy at law against Dewey or Francis Harvey is premised on its allegations that Dewey and Francis Harvey have no assets and are contemplating bankruptcy.

These arguments do not cure the deficiencies in Mangiardi's unjust enrichment claim against Berlin Station. Mangiardi alleges that it entered into an agreement with Dewey and/or Francis Harvey, not Berlin Station. Although Mangiardi alleges that it reasonably expected Berlin Station to pay its invoices if Dewey or Francis Harvey could not, Mangiardi does not allege any circumstances that would reasonably notify Berlin Station that Mangiardi had that expectation.[3] See Axenics, 2013 WL 960175, at *9 ("Nor is there any indication that [the owner] accepted benefits under circumstances reasonably notifying it that [the subcontractor] expected to be compensated directly by [the owner] rather than by [the general contractor].").

In addition, Mangiardi has an adequate remedy at law: its contract claims against Dewey and Francis Harvey. Eastern Elec.,

---

[3]Further, Mangiardi does not allege any facts to support its assertion that it expected to be compensated by Berlin Station, and the court disregards such conclusory allegations. See Silverstrand Investments v. AMAG Pharm., Inc., 707 F.3d 95, 101 (1st Cir. 2013) (in considering a motion to dismiss under Rule 12(b)(6), the court "first discard[s] bald assertions and conclusory allegations").

2005 WL 3447957, at *2 (The plaintiff "does not explain why the remedy it seeks against FERD for breach of contract, seeking damages for the amounts that it alleges have not been paid, is not adequate.  No irreparable injury exists if the injury is compensable in damages.") (citing Exeter Realty Corp. v. Buck, 104 N.H. 199, 201 (1962)).  Although Mangiardi contends that it may not be able to collect damages in a lawsuit against Francis Harvey or Dewey because of their potential bankruptcy, that possibility does not create an unjust enrichment claim against Berlin Station.  See Schell v. Kent, 2009 WL 948657, at *2 (D.N.H. Apr. 6, 2009) ("[T]he doctrine [of unjust enrichment] is not animated by some moral obligation, but rather 'there must be some specific legal principle or situation which equity has established or recognized' to justify restitution.") (quoting Cohen, 118 N.H. at 518); see also Restatement of Restitution § 110 (1937) ("A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.").

In addition, the possibility that Berlin Station did not pay Babcock for Mangiardi's services does not create an unjust enrichment claim against Berlin Station.  See, e.g., Truland Service Corp. v. McBride Elec., Inc., 2011 WL 1599543, at *6 (D.

Md. Apr. 27, 2011) (an owner's liability for the unpaid invoices of a subcontractor "do not turn on whether the owner has fully paid the general contractor") (quoting <u>Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.</u>, 342 Md. 169, 183 (Md. 1996) (collecting cases)).  Accordingly, Mangiardi's unjust enrichment claim against Berlin Station is dismissed.

    2.   <u>Babcock</u>

Mangiardi contends that it can maintain an unjust enrichment claim against Babcock on the same theory it argued against Berlin Station: "because (1) Mangiardi does not have an adequate remedy at law against Dewey and/or Francis Harvey, and (2) Mangiardi has learned that Babcock may not have paid Francis Harvey and/or Dewey in full for the services Mangiardi provided at the Construction Site."  Mangiardi also argues in the alternative that even if Babcock paid Francis Harvey and/or Dewey in full, Mangiardi has pled a claim for unjust enrichment against Babcock based on a theory of estoppel.

Courts generally analyze unjust enrichment claims of third-tier subcontractors or sub-subcontractors against general contractors using the same principles which guide claims of subcontractors against owners.  See <u>EFCO Corp. v. U.W. Marx, Inc.</u>, 124 F.3d 394, 401 (2d Cir. 1997) ("This principle [that an

owner is not liable to a subcontractor for work performed in furtherance of a subcontract] is equally applicable where . . . the parties are a primary contractor and a second-tier subcontractor rather than a landowner and subcontractor.") (internal quotation marks and citation omitted); Tradesmen Int'l, Inc. v. United States Postal Serv., 234 F. Supp. 2d 1191, 1205 (D. Kan. 2002) (principles preventing a subcontractor from recovering against a property owner in unjust enrichment are equally applicable to a sub-subcontractor's claim of unjust enrichment against the general contractor).  Therefore, to the extent Mangiardi's unjust enrichment claim against Babcock is based on the same or similar allegations as those underlying Mangiardi's unjust enrichment claim against Berlin Station, it is dismissed for the reasons discussed above.

As for Mangiardi's estoppel theory, Mangiardi points to paragraph 42 in its complaint, which reads as follows:

> Despite being aware of Francis Harvey's precarious financial position and the unlikelihood that it was paying its subcontractors, Babcock, if said payments were actually made, continued to make these payments to Francis Harvey without further inquiry, rather than requiring it to post a bond, requiring lien releases from Francis Harvey's subcontractors to ensure that they were getting paid, and/or paying Francis Harvey's subcontractors, including Mangiardi, directly for the services they provided at the Construction Site.

Compl. § 42.  Mangiardi contends that this allegation is

sufficient to state a claim for unjust enrichment against Babcock and cites Concrete Constructors, Inc. v. Harry Shapiro & Sons, Inc., 121 N.H. 888 (1981) (per curiam) in support of its argument.

In Concrete Constructors, a subcontractor brought several claims, including unjust enrichment, against the property owner and lessee owner when the subcontractor was not paid pursuant to its contract with the general contractor.  Id. at 889.  The New Hampshire Supreme Court held that the subcontractor could not recover from the property owner under any theory of liability. The court determined, however, that the lessee owner was "estopped to deny the legitimate invoice of a subcontractor who ha[d] not been paid the undisputed amount of his claim for labor and materials . . . ."  Id. at 892.  The court reasoned that, "[the lessee owner], with knowledge of [the subcontractor's] subcontract and [the general contractor's] financial position, not only failed to make a disclosure, but actually acted to [the subcontractor's] detriment by making direct payments to [the general contractor], resulting in the nonpayment of the subcontractor[], and by failing to require [the general contractor] to post a bond which might have helped [the subcontractor]."  Id. at 893.  The court held that the lessee owner was liable "because the [lessee] owner, with fresh

knowledge of the failings of a first general contractor to a subcontractor, and with the means available to protect the subcontractor, failed to inform himself of the failings of a second contractor selected by him who utilized the same subcontractor." Id. at 892.  The court applied the doctrine of estoppel, and imposed liability on the lessee owner.

Mangiardi's reliance on the holding of Concrete Constructors is misplaced.  The court in Concrete Constructors held that the plaintiff could not succeed on a claim of unjust enrichment against the defendants. Id. at 891 ("The plaintiff's claim of unjust enrichment likewise fails.").  Although the court allowed the plaintiff to recover against the lessee owner, it did so under an estoppel theory, which was separate from the plaintiff's unjust enrichment theory.[4]  Therefore, Mangiardi cannot use the holding of Concrete Constructors as the basis for its unjust enrichment claim.

---

[4] The plaintiff in Concrete Constructors argued that the Master "erred in dismissing the plaintiff subcontractor's petition for a mechanics lien under RSA ch. 447, in denying the plaintiff subcontractor a right to recover payment for work, services, and material under a theory of unjust enrichment, and in finding that the defendants are not liable to the plaintiff subcontractor for any claim arising out of the subcontract between the plaintiff subcontractor and the general contractor." Id. at 889.

Even if the holding of Concrete Constructors could support Mangiardi's unjust enrichment claim, the court's decision was based on "the peculiar facts of [the] case." Id. at 893. Those facts included the defendant's knowledge that its previous contractor had failed to pay the plaintiff subcontractor, the defendant's knowledge of the relationship and agreement between the contractor and the plaintiff subcontractor, and the defendant's contractual obligation to pay all expenses for construction in excess of a certain amount. Such "peculiar" facts are not present here.[5]

Accordingly, Mangiardi's unjust enrichment claim against Babcock is dismissed.

B. Quantum Meruit

A claim in quantum meruit refers to "contracts implied in fact or to obligations imposed by law without regard to the intention or assent of the parties bound, for reasons dictated by

---

[5]Mangiardi points to CWM Chem. Servs. v. Berlin Station Station, No. 218-2012-CV-00477 (N.H. Super. Ct., Rockingham Cnty., Oct. 15, 2012), a case against Berlin Station and Babcock involving similar claims to those Mangiardi brings here and arising out of the same Project. In CWM, the court relied on Concrete Constructors and denied Babcock's motion to dismiss the unjust enrichment claim on the basis of estoppel. For the reasons stated above, the court declines to follow the holding of CWM.

reason and justice." State v. Haley, 94 N.H. 69, 72 (1946). "A valid claim in quantum meruit requires that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." Gen. Insulation, 159 N.H. at 612 (internal quotation marks, citation, and alterations omitted); see also Universal Am-Can, Ltd. v. CSI-Concrete Sys., Inc., 2012 WL 2627764, at *1 (D.N.H. July 5, 2012). "While damages in unjust enrichment are measured by the value of what was inequitably retained, in quantum meruit, by contrast, the damages . . . are based on the value of the services provided by the plaintiff." Id. (internal citation and quotation marks omitted).

As discussed above, Mangiardi alleges that it knew that Dewey was only a "pass-through" entity, and, therefore, it reasonably expected the other defendants, including Berlin Station and Babcock, to pay its invoices if Dewey did not. Mangiardi further alleges that Francis Harvey's payment of the first invoice confirmed Mangiardi's expectation that the other defendants would pay Mangiardi's invoices if Dewey did not.

1.  <u>Berlin Station</u>

Mangiardi's allegations do not make out a claim for quantum meruit against Berlin Station. Mangiardi does not allege that Dewey or Francis Harvey ever informed Berlin Station of Mangiardi's involvement with the Project, and does not allege any facts suggesting that Berlin Station was aware of Mangiardi's work on the Project. Therefore, Mangiardi has not alleged that it did work with the knowledge and consent of Berlin Station.

In addition, Mangiardi has not alleged circumstances that would have made it reasonable for it to expect payment from Berlin Station. Mangiardi does not allege any communication or interaction with Berlin Station.[6] According to the complaint, Dewey discussed the terms of Mangiardi's contract only with Francis Harvey.[7] Even viewing the facts in the light most favorable to Mangiardi, it was not reasonable for Mangiardi, a

---

[6] Mangiardi alleges that it reached out to Cate Street, which it believed to be the owner of the Construction Site, after failing to obtain payment for its services from the other defendants. Although Mangiardi alleges that Cate Street "formed and owned entity Berlin Station," Mangiardi does not allege that it ever communicated with anyone from Berlin Station itself. Also, communications with Cate Street occurred after Mangiardi rendered services, not before.

[7] Mangiardi alleges "[u]pon information and belief, Dewey discussed Mangiardi's terms with Francis Harvey and in late November 2011, the terms of the contract were confirmed in writing by Dewey and Francis Harvey." Compl. § 18.

third-tier subcontractor, to expect payment from Berlin Station, the property owner, for services provided pursuant to an express agreement with Dewey, a sub-subcontractor.  See <u>Interstate Contracting Corp. v. City of Dallas</u>, 320 F.3d 539, 543 n.3 (5th Cir. 2003) ("In construction contracts, in the absence of an express agreement to the contrary, a subcontractor is not in privity with the owner and thus looks to the general contractor alone for payment.  The owner is liable for payment only to the general contractor.") (internal citations omitted); <u>Aniero Concrete Co., Inc. v. N.Y.C. Const. Auth.</u>, 2000 WL 863208, at *17 (S.D.N.Y. June 27, 2000).  Accordingly, Berlin Station is entitled to judgment on Mangiardi's quantum meruit claim.

    2.   <u>Babcock</u>

For similar reasons, Mangiardi does not allege facts to support a claim for quantum meruit against Babcock.  As discussed above, Mangiardi alleges that Dewey agreed to the terms of Mangiardi's contract.  As with its allegations against Berlin Station, Mangiardi does not allege that Babcock had any knowledge of or consented to Mangiardi's work on the Project.  Although Mangiardi alleges that it contacted Babcock to request payment of outstanding invoices after Francis Harvey and Dewey failed to pay, that contact occurred after Mangiardi had performed its work

18

under its agreement with Dewey.  Therefore, the contact with Babcock after the fact does not suggest that Babcock knew of or consented to Mangiardi's work on the Project before the work was done.

In addition, Mangiardi has not alleged circumstances that made it reasonable to expect payment from Babcock.  As discussed, Mangiardi, a third-tier subcontractor, provided services pursuant to a contract with Dewey, and its right to payment for services was expressly governed by that contract.  Even if Mangiardi's conclusory allegation that it knew Dewey was a pass-through entity could be credited, those circumstances would, at best, make it reasonable to expect payment from Francis Harvey, not Babcock or Berlin Station.[10]  Moreover, although Mangiardi argues that Dewey's and Francis Harvey's financial situation make it difficult or impossible to recover against those entities, that

---

[10]Mangiardi's allegation that Francis Harvey's payment of the first invoice "confirmed Mangiardi's expectation that payment for its services would be made by any of the Defendants," Compl. § 21, is conclusory.  Mangiardi provides no reasonable grounds to expect Berlin Station or Babcock to pay simply because Francis Harvey paid one invoice.  Mangiardi also alleges that Francis Harvey became a party to the contract between Mangiardi and Dewey, further undermining its argument that Francis Harvey's payment of the first invoice confirmed Mangiardi's expectation that Berlin Station or Babcock, non-parties to the contract, would pay any future invoices.

does not make its expectation of payment from Babcock reasonable.[11]  See, e.g., Invest Almaz, 243 F.3d at 64.

## Conclusion

For the foregoing reasons, Berlin Station's motion to dismiss (document no. 20) and Babcock's motion to dismiss (document no. 21) are granted.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 30, 2013

cc:  David Himelfarb, Esquire
     Rebecca S. Kane, Esquire
     Thomas J. Pappas, Esquire

---

[11]To the extent Mangiardi argues that Babcock is responsible for Mangiardi's outstanding invoices because Babcock eventually terminated its contract with Francis Harvey, that argument is unavailing.  See, e.g., Insulation Contracting and Supply v. Kravco, Inc., 209 N.J. Super. 367, 374 (N.J. 1986) ("In the absence of a contractual provision to the contrary, [a general contractor], by terminating its contract with [a subcontractor], did not incur liability to pay plaintiff on its sub-subcontract.").

20